17 F.3d 1434
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 James D. HAZZARD, Plaintiff-Appellee,
v.
SOUTHERN DREDGING COMPANY, INCORPORATED; H. George Dent,
Jr., individually and as President of Southern
Dredging Company, Incorporated,
Defendants-Appellants.
James D. HAZZARD, Plaintiff-Appellant,
v.
SOUTHERN DREDGING COMPANY, INCORPORATED; H. George Dent,
Jr., individually and as President of Southern
Dredging Company, Incorporated,
Defendants-Appellees.
JAMES D. HAZZARD, Plaintiff-Appellee,
v.
SOUTHERN DREDGING COMPANY, INCORPORATED; H. George Dent,
Jr., individually and as President of Southern
Dredging Company, Incorporated,
Defendants-Appellants.
JAMES D. HAZZARD, Plaintiff-Appellant,
v.
SOUTHERN DREDGING COMPANY, INCORPORATED; H. George Dent,
Jr., individually and as President of Southern
Dredging Company, Incorporated,
Defendants-Appellees.
 Nos. 93-1063, 93-1258, 93-1277, 93-1371.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 9, 1993.
Decided: March 2, 1994.
 
 Appeals from the United States District Court for the District of South Carolina, at Charleston. David C. Norton, District Judge. (CA-90-685-2-18)
 ARGUED: William Jefferson Leath, Jr., Young, Clement, Rivers & Tisdale, Charleston, SC, for Appellants.
 Charles Tucker Smith, Grimes & Smith, Georgetown, SC, for Appellee.
 ON BRIEF: Stephen P. Groves, Young, Clement, Rivers & Tisdale, Charleston, SC, for Appellants.
 John P. Grimes, Grimes & Smith, Georgetown, SC, for Appellee.
 D.S.C.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before ERVIN, Chief Judge, and WILKINS and NIEMEYER,
 OPINION
 PER CURIAM:
 
 
 1
 In September 1989, the force of Hurricane Hugo caused the dredge "HAZZARD" to sink in the Charleston, South Carolina harbor at the marina of Southern Dredging Company, Inc., where it had been moored. The dredge, which was determined to be a total loss for insurance purposes, was owned by James D. Hazzard. Southern Dredging, which had taken out an insurance policy on the dredge, made a claim to the insurance company for payment of $100,000, the face amount of the policy. After Southern Dredging certified to the insurance company in the proof of loss that Southern Dredging was the sole owner and operator of the vessel, the insurance company paid out $99,000 to Southern Dredging for the loss.
 
 
 2
 James Hazzard, as owner of the HAZZARD, filed this suit in admiralty for the proceeds of the insurance that were paid to Southern Dredging, alleging a breach of contract, constructive trust, and unjust enrichment. Southern Dredging counterclaimed and asserted a right to the proceeds of the insurance policy, since it paid the insurance premiums, stored the dredge, salvaged it, and sustained damage to its business when the sunken dredge blocked access to Southern Dredging's marina.
 
 
 3
 After the case was tried to the court, the court made findings of fact and conclusions of law, and entered one judgment on both James Hazzard's claim and Southern Dredging's counterclaim, holding in favor of James Hazzard in the amount of $61,363.06. This judgment represented an award to James Hazzard of the proceeds of the insurance policy, less the expenses allowed to Southern Dredging for maintaining and salvaging the dredge. The court denied Southern Dredging's claim for lost profit caused by the dredge's blocking the marina, finding that the HAZZARD's blockage of the marina did not cause any loss of profit. Exercising its discretion, the court also denied both parties their claims for prejudgment interest. The court based its judgment on factual findings that the dredge had been stored with Southern Dredging pursuant to an implied bailment.
 
 
 4
 In 1985, James Hazzard had leased the dredge HAZZARD to Southern Dredging for $15,000 in accordance with a written lease agreement, so that Southern Dredging could undertake the Charleston Municipal Marina project, a job which was to have taken about two months. As part of the lease agreement, Southern Dredging agreed to insure the HAZZARD for $100,000.
 
 
 5
 Southern Dredging obtained the policy, as agreed, and named James Hazzard as a loss payee. Southern Dredging completed the dredging of the Municipal Marina in May, 1986, and thereafter the HAZZARD remained moored at Southern Dredging's marina. James Hazzard contends that he allowed Southern Dredging to postpone returning the dredge after termination of the lease because Southern Dredging was considering dredging its own marina. Southern Dredging contends that James Hazzard left the dredge at Southern Dredging's marina in case Southern Dredging wanted to use it, for whatever reason, at no charge. In any event, the HAZZARD was never used again, and it remained at Southern Dredging's marina for over three years until it was destroyed by Hurricane Hugo. Under either version of the arrangement for the custody of the HAZZARD, the facts are sufficient to support the district court's finding of an implied bailment relationship between the parties during the period from May 1986 until the dredge was destroyed in September 1989.
 
 
 6
 Southern Dredging argues that there was no bailment and that the insurance was obtained by it at its own expense solely to protect its own interests, including the risk of expenses that it incurred in salvaging the dredge and the lost profits sustained when the dredge sank and blocked access to Southern Dredging's marina. After the completion of the Charleston Municipal Marina job in May 1986, Southern Dredging continued to maintain, at its own expense, the $100,000 insurance policy on the HAZZARD. With the policy's renewal in 1987, moreover, Southern Dredging removed the full navigation coverage which reduced the premium, and also deleted James Hazzard as a loss payee. Despite these circumstances, which are not disputed, we conclude that the record does not justify Southern Dredging's claim for the proceeds of the insurance. The insurance policy was obtained by Southern Dredging as hull insurance payable for loss of the dredge itself. Thus, any payment would go to whoever has an interest in the hull. On the proof of loss submitted by Southern Dredging to the insurance company, Southern Dredging falsely declared that it was the sole owner and operator of the vessel, a condition precedent to the insurance company's obligation to pay the loss.
 
 
 7
 In these circumstances, we can find no error in the district court's finding that Southern Dredging retained custody of the dredge under an implied bailment arrangement and that the insurance proceeds were received by Southern Dredging in trust for its sole owner, James Hazzard. Southern Dredging made no claim to any interest in the hull. We also conclude that the court's findings with respect to the set-offs actually allowed to Southern Dredging for its expenses in maintaining and salvaging the dredge, and the conclusion that Southern Dredging failed to prove lost profits are not clearly erroneous.
 
 
 8
 Southern Dredging contends that awarding Hazzard over $61,000 when the dredge and equipment were worth no more than $27,000 amounts to a windfall to James Hazzard. Inherent in that argument is the claim that if Hazzard is not entitled to the windfall, Southern Dredging is. Southern Dredging, however, is hardly the one to make this argument. It acknowledges that Hazzard owned the dredge; that the insurance was hull insurance for loss of the dredge; that Southern Dredging submitted a proof of loss under oath to the insurance company for payment of $100,000; and that the insurance company paid $99,000 on the policy. Apparently, the insurance company paid the claim without a survey because it was impractical to do so at the time in the face of all of the damage claims then presented as a result of Hurricane Hugo. Having submitted the claim for the dredge in the amount of $100,000, Southern Dredging can hardly complain now that the insurance company's payment was too much. As we have noted, since the risk insured was the hull and since the hull was owned by James Hazzard, as between him and Southern Dredging, James Hazzard has the superior claim.
 
 
 9
 Even though the district court intended to award Southern Dredging its expenses incurred in respect to the implied bailment during the period from May 1986 until the barge's destruction in September 1989, the court failed to account for Southern Dredging's payment of the insurance premiums during that period, an expense in excess of $10,000. In failing to award Southern Dredging this bailment expense, we believe that the district court erred.
 
 
 10
 Accordingly, the judgment is vacated and the case remanded to the district court solely for the purpose of reducing the award to James Hazzard by an amount equivalent to the insurance premiums paid by Southern Dredging after the termination of the written lease in May, 1986. In all other respects, we affirm.
 
 IT IS SO ORDERED